UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-040

FRED NEKOUEE, individually,             :
                                        :
            Plaintiff,                   :
                                        :
vs.                                     :
                                        :
CHAMPION WINDSOR LLC, a Colorado        :
limited liability company;              :
                                        :
            Defendant.                   :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, CHAMPION WINDSOR LLC, a Colorado limited liability company (sometimes

referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs

pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant's property, an AmericInn, has an address of 7645 Westgate Drive,

Windsor, Colorado 80528, in Larimer County, Colorado ("AmericInn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district

of the situs of the property.   The Defendant's property is located in and does business within this

judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      On his way back from Rocky Mountain National Park, Fred Nekouee stayed at the AmericInn which forms the basis of this lawsuit on August 3, 2018 with a checkout on August 4, 2018.

8.      Fred Nekouee requested an accessible room.

9.      Fred Nekouee stayed in accessible room 107 at the AmericInn.

10.      Due to the barriers to access Fred Nekouee encountered at the AmericInn, Fred Nekouee is deterred from visiting the AmericInn Inn to avail himself of the goods and services offered to the public there.

11.      Fred Nekouee visited the Longmont-Firestone area near the AmericInn again on October 3, 2018 to attend a heavy equipment auction and he visited Rocky Mountain National Park on October 2, 2018.

12.      The Plaintiff has definite plans to return to the Longmont-Firestone area in late January or early February of 2019.

13.      AmericInn is close to the heavy equipment auction and dealerships he visits, and

it is a good hotel location from which to make day trips to Rocky Mountain National Park.

14.     The Plaintiff likes to stay at moderately-priced hotels that are a chain like AmericInn.

15.     The Plaintiff plans to return to the AmericInn again if the barriers to access are removed.

16.     The Plaintiff has encountered architectural barriers at the subject property.

17.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms and swimming pool in the AmericInn.

18.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

19.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

20.     The Plaintiff encountered and observed barriers to access in the accessible guestroom 107, the restrooms in the accessible room 107 and the pool area of the AmericInn.

21.     The Plaintiff is deterred from visiting the AmericInn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

22.     Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the AmericInn.

23.     AmericInn is a place of public accommodation.

24.     Defendant is responsible for complying with the obligations of the ADA.

25.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 30 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

26.     Fred Nekouee desires to visit the AmericInn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

27.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

28.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

29.     Preliminary inspections of the AmericInn have shown that ADA violations exist.

30.     The ADA violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.     The change in elevation in front of the lobby door is greater than ¼ of an inch. This change in elevation is in violation of Federal Law 2010, ADAAG § 303.2.  The Plaintiff encountered this change of level while moving in his wheelchair, and it stopped

the forward movement of his wheelchair.

b.      The change in elevation on the accessible route on the sidewalk from the parking spaces for disabled patrons to the hotel entrance is about 1 inch and greater than ¼ of an inch.   This change of level on this walking surface of the accessible route is in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped his wheelchair from moving forward.

c.      In the parking lot, the cross slope of the middle section of the access aisle serving the disabled parking spaces is as steep as 1:31.3 (3.2%) and steeper than the maximum allowed slope of 1:48 (2%).   This cross slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this cross slope in this access aisle, and it made him unstable in his wheelchair.

d.      In the parking lot, the cross slope of the back section of the access aisle serving the disabled parking spaces is as steep as about 1:30.3 (3.3%) and steeper than a slope of 1:48 (2%).   This cross slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this cross slope in this access aisle, and it made him unstable in his wheelchair.

e.      The cross slope of the walking surface towards the lobby door is as steep as about 1:18.2 (5.5%) and steeper than a slope of 1:48 (2%).   This cross slope of the walking surface towards the lobby door that is part of the accessible route is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, § 403.3.   While moving in his wheelchair, the Plaintiff encountered this cross slope and it made him unstable in his wheelchair.

f.    The cross slope of the accessible route, the sidewalk, from the accessible parking spaces to the hotel is as steep as about 1:22.7 (4.4%) and steeper than 1:48 (2%).   This cross slope is steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   While moving in his wheelchair, the Plaintiff encountered this cross slope on this sidewalk.

g.    The landing at the top of the ramp shown in the photograph below has a slope as steep as 1:14.1. (7.1%) and steeper than slope of 1:48 (2%).   This landing has a slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   Due to the slope of this landing, the Plaintiff required assistance to ascend and descend this ramp while moving in his wheelchair.





h.    The counter slope of the gutter near the bottom of the ramp shown in subparagraph

(g) above is as steep as about 1:15.2 (6.6%) and steeper than a counter slope of 1:20 (5%).

The counter slope of this gutter adjacent to the curb ramp is steeper than 1:20 (5%), in

violation of Federal Law 2010, ADAAG § 406.2.   The Plaintiff encountered this gutter

while moving in his wheelchair and the counter slope of the gutter made him unstable in

his wheelchair.

**MEN'S RESTROOM IN THE LOBBY**

i.    In the men's restroom in the lobby, the space between the rear wall grab bar and

the and top of the toilet tank is less than 1 ½ inches.   The space between this grab bar and

the toilet tank below it is less than 1 ½ inches, in violation of Federal Law 2010, ADAAG

§§ 604.5 and 609.3.   The Plaintiff had difficulty grabbing the rear wall grab bar to transfer

himself from his wheelchair to the toilet due to this lack of space between the rear wall

grab bar and the top of the toilet tank.

j.    In the men's restroom in the lobby, as shown in the photograph below, the lavatory sink does not have knee and toe clearance since the space underneath the sink is blocked by a cabinet.   This lack of knee and toe clearance does not allow an individual in a wheelchair to make a forward approach to the sink, in violation of Federal Law 2010, ADAAG §§ 305, 306.2.3.   The Plaintiff could not use this sink from a front approach in his wheelchair due to the lack of clearance beneath this sink.



k.    In the men's restroom in the lobby, the paper towel dispenser protrudes horizontally from the wall more than 4 inches into the circulation path and is mounted on the wall between 27 and 80 inches above the floor.   This protrusion into the circulation path is in violation of Federal Law 2010, ADAAG § 307.2.   The Plaintiff was at risk of injuring his head while moving in his wheelchair due to this protrusion.

l.    In the men's restroom in the lobby, the space between the top of the rear wall

grab bar and the soap dispenser above it is about 5 inches and less than 12 inches.   The space between the rear wall grab bar and the soap dispenser is less than the minimum required space of 12 inches, in violation of Federal Law 2010, ADAAG § 609.3. The Plaintiff encountered this lack of space, and it made it difficult for him to use the rear wall grab bar to transfer himself from his wheelchair to the toilet.

m.    In the men's restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 inches and 9 inches from the front of the toilet.   This condition violates Federal Law 2010, ADAAG § 604.7.   Due to its location, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

n.    In the men's restroom in the lobby, the paper towel dispenser outlet is about 58 inches above the floor and higher than 48 inches above the floor.   This paper towel dispenser outlet is outside of the reach range of an individual in a wheelchair of a maximum height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   From his wheelchair, the Plaintiff could not reach this paper towel dispenser outlet.

o.    In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is about 46 inches above the floor and higher than 40 inches above the floor.   The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   From his wheelchair, the Plaintiff could not see his full face in this mirror due to the height of the mirror's reflecting surface above the floor.

p.    In the men's restroom in the lobby, the toilet does not have the flush control mounted on the open and wide side of the clear floor space.   This condition is in violation

of Federal Law 2010, ADAAG § 604.6.   Due to the location of this flush control, the Plaintiff could not flush the toilet without assistance.

q.   In the men's restroom in the lobby, the door hardware lock requires tight grasping, pinching, or twisting of the wrist and it cannot be opened with a closed fist or loose grip.   This condition is in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   The Plaintiff could not open this door lock with a closed fist or loose grip.

r.   In the men's restroom in the lobby, the coat hook on the back of the entrance door is about 55 inches above the floor and higher than 48 inches above the floor.   This coat hook is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   From his wheelchair, the Plaintiff could not use this coat hook.

**BREAKFAST AREA**

s.   In the breakfast area, the juice machine dispenser keys are about 53 inches above the floor and higher than 48 inches above the floor.   The juice machine dispenser keys are higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. From his wheelchair, the Plaintiff could not serve himself juice due to the height of these dispenser keys above the floor.

t.   In the breakfast area, the hot water machine dispenser lever is about 60 inches above the floor and higher than 48 inches above the floor.   The hot water machine dispenser lever is higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not serve himself hot water

due to the height of this lever above the floor.

u.   In the breakfast area, the dispenser levers for the coffee flasks are about 59 inches above the floor and higher than 48 inches above the floor.   The dispenser levers for the coffee flasks are higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not serve himself coffee due to the height of these dispenser levers above the floor.

v.   In the breakfast area, the coffee cup holder is higher than 48 inches above the floor. The coffee cup holder is higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not reach the coffee cups.

w.   In the breakfast area, the bread/muffin container shelves are about 53 inches above the floor and higher than 44 inches above the floor and are set back on the counter more than 20 inches.   These container shelves are higher than the maximum allowed height of 44 inches above the finish floor where the reach depth is greater than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff observed this condition.

x.   In the breakfast area, the cups on top of the waffle batter dispenser are about 62 inches above the floor and higher than 44 inches above the floor and are set back on the counter more than 20 inches.   These cups are higher than the maximum allowed height of 44 inches above the finish floor where the reach depth is greater than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff observed this condition.

y.   In the breakfast area, the jam and peanut butter holder is about 54 inches above the floor and higher than 48 inches above the floor.   This holder is higher than the

maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not serve himself jam due to the height of this holder above the floor.

z.     In the breakfast area, the stand holding sugar and condiments is about 56 inches above the floor and higher than 48 inches above the floor.   This stand is higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not reach the sugar.

**ACCESSIBLE GUESTROOM 107**

aa.     The force needed to open the entrance door to guestroom 107 is about 10 pounds. The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door and to enter guestroom 107.

bb.     In guestroom 107, the handle of the patio door requires tight grasping or pinching to use it.   This condition is in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4. The Plaintiff could not operate this handle to open the patio door, and he required assistance to open the patio door.

cc.     In guestroom 107, the switch to the night lamp is about 56.5 inches above the floor and higher than 48 inches above the floor.   This switch is higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20

inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not reach this switch due to its height above the floor.

dd.   In guestroom 107, the iron holder is about 65 inches above the floor and higher than 48 inches above the floor.   This holder is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. From his wheelchair, the Plaintiff could not reach the iron due to its height above the floor.

ee.   In guestroom 107, the security latch on the entrance door is about 55 inches above the floor and higher than 48 inches above the floor.   This latch is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not reach this latch due to its height above the floor.

**RESTROOM IN ACCESSIBLE GUESTROOM 107**

ff.   In the restroom of guestroom 107, the transfer type shower compartment does not have a folding or non-folding seat.   This condition is in violation of Federal Law 2010, ADAAG § 608.4   The Plaintiff observed this condition, and it deters him from visiting this AmericInn again.

gg.   In the restroom of guestroom 107, the shower spray unit was set at about 70 inches above the shower floor when the Plaintiff checked into the room.   AmericInn must be required have a policy in place to adjust the height of the shower spray unit to at or below 48 inches above the shower floor after a guest checks out so that upon check in disabled guests have access to the shower spray unit.   Due to its position at check in, the Plaintiff required assistance to adjust the height of this shower spray unit.

hh.   In the restroom of guestroom 107, the lavatory pipes under the sink are not

insulated as shown in the photograph below.   This condition is in violation of Federal Law

2010, ADAAG §§ 606.3 and 606.5.   The Plaintiff used this sink, and due to this lack of

insulation on the lavatory pipes under this sink, he risked skin burns and injury to his legs.



ii.     In the restroom of guestroom 107, the centerline of the toilet paper dispenser is

not between 7 inches and 9 inches from the front of the toilet.   The location of this toilet

paper dispenser is in violation of Federal Law 2010, ADAAG § 604.7.   Due to the location

of the toilet paper dispenser, the Plaintiff could not reach the toilet paper from a normal

sitting position on the toilet.

jj.     In the restroom of guestroom 107, the toilet does not have the flush control

mounted on the open and wide side of the clear floor space.   This condition is in violation

of Federal Law 2010, ADAAG § 604.6.   Due to the location of this flush control, the

Plaintiff had great difficulty flushing this toilet.

kk.     The hook on the restroom door in guestroom 107, is about 56 inches above the

floor and higher than 48 inches above the floor.   This hook is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this hook.

ll.    In the restroom of guestroom 107, the hairdryer is about 55 inches above the floor and higher than 48 inches above the floor.   This holder is higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.   From his wheelchair, the Plaintiff could not reach the hairdryer due to its height above the floor.

mm.        In the restroom of guestroom 107, the towel bar is about 60 inches above the floor and higher than 48 inches above the floor.   This holder is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   The Plaintiff observed this condition, and it deters him from visiting AmericInn again.

nn.   In the restroom of guestroom 107, the towel shelf behind the toilet is about 56 inches above the floor and higher than 48 inches above the floor.   This shelf is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   From his wheelchair, the Plaintiff could not reach the bath towels due to the height of this towel shelf above the floor.

**POOL AREA**

oo.   The door to the pool entrance does not have signage with the international symbol of accessibility.   This lack of signage is in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1.   The Plaintiff observed this lack of signage, and it deters him from

visiting AmericInn again.

pp.   In the pool area, the entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 14 inches and less than 18 inches.  This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.  The Plaintiff encountered this condition, and it made it very difficult for him to position his wheelchair to enter this door.

qq.   In the pool area, the cross slope of the walking surface around the pool is as steep as about 1:23.8 (4.2%) and steeper than a slope of 1:48 (2%).  This cross slope is in violation of Federal Law 2010, ADAAG § 403.3.  The Plaintiff encountered this cross slope on this walking surface while moving in his wheelchair, and it made him unstable in his wheelchair.

**RESTROOM IN THE SIMMING POOL AREA**

rr.   The force needed to open the entrance door to restroom in the swimming pool area is about 14 pounds.  The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. The Plaintiff encountered this door in his wheelchair, and he required assistance to open this door.

ss.   In the pool area restroom, a shower spray unit with a hose that can be used both as a fixed-position shower head and as a hand-held shower is not provided.   This condition is in violation of Federal Law 2010, ADAAG § 607.6.  The Plaintiff observed this condition, and it deters him from visiting AmericInn again.

tt.   In the pool area restroom, the transfer type shower does not have a folding or

non-folding seat.   This lack of a seat in this transfer type shower is in violation of Federal Law 2010, ADAAG § 608.4.   The Plaintiff observed this condition, and it deters him from visiting AmericInn again.

uu.   In the pool area restroom, the transfer type shower compartment does not have a clearance 36 inches wide by 48 inches long measured from the control wall.   This condition is in violation of Federal Law 2010, ADAAG § 608.2.1.   The Plaintiff observed this condition, and it deters him from visiting AmericInn again.

vv.   In the pool area restroom, the bottom edge of the mirror's reflecting surface is about 44 inches above the floor and higher than 40 inches above the floor.   The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   Due to its height above the floor, the Plaintiff could not see his full face in this mirror while sitting in his wheelchair.

ww.   The door to the pool area restroom has a door lock and knob that require tight grasping, pinching or twisting of the wrist.   The required operation of this door lock and knob are in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   The Plaintiff could not open this door with a closed fist or loose grip.

xx.   In the pool area restroom, the hook on the restroom wall is about 70 inches above the floor and higher than 48 inches above the floor.   This hook is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed the height of this hook above the floor, and it deters him from visiting this AmericInn again.

yy.   In the pool area restroom, the hook on the restroom door is about 64 inches above the floor and higher than 48 inches above the floor.   This hook is higher than 48 inches

above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed the height of this hook above the floor, and it deters him from visiting this AmericInn again.

### HALLWAY VENDING MACHINES

zz.   In the hallway, the card reader of the soda vending machine is about 60 inches above the floor and higher than 48 inches above the floor.   The height of this card reader above the finish floor is in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff observed this condition, and it deters him from visiting AmericInn again.

aaa.       In the hallway, the snack vending machine keys are about 55 inches above the floor and higher than 48 inches above the floor.   The height of these keys above the finish floor is in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff observed this condition, and it deters him from visiting AmericInn again.

31.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

32.   The discriminatory violations described in paragraph 30 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act.

33.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged

by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual

Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and

damage without the immediate relief provided by the ADA as requested herein.

34.     Defendant has discriminated against the individual by denying individuals access

to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations of its place of public accommodation or commercial facility in violation of 42

U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to

discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable

modifications in policies, practices or procedures, when such modifications are necessary to afford

all offered goods, services, facilities, privileges, advantages or accommodations to individuals with

disabilities; and by failing to take such efforts that may be necessary to ensure that no individual

with a disability is excluded, denied services, segregated or otherwise treated differently than other

individuals because of the absence of auxiliary aids and services.

35.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is

warranted.

36.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's

fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR

36.505.

37.     Defendant is required to remove the existing architectural barriers to the physically

disabled when such removal is readily achievable for its place of public accommodation that have

existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an

alteration to Defendant's place of public accommodation since January 26, 1992, then the

Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

38.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

39.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the AmericInn and the parking lot, access aisles and walkways along the accessible route, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and

usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by taking such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

      c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207; Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*